UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RITE AID OF NEW YORK, INC.,

        Petitioner,

                    **Hon. Hugh B. Scott**

     v.

                     07CV708A

                     **Report
&
Recommendation**

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION
LOCAL ONE,

        Respondent.
_____

  This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 3).  The instant matter before the Court is petitioner's Petition (Docket No. 1, Ex. A[1]) to stay arbitration and respondent's cross-petition and motion to compel arbitration, pursuant to 29 U.S.C. § 185 and 9 U.S.C. § 4 (Docket Nos. 2[2], 9[3]).

---

[1] In support of this Petition is the Notice of Verified Petition to Stay Arbitration, Docket No. 1, Ex. A; the Verified Petition, id., Ex. B; Memorandum of Law in Support of the Verified Petition, id.; the affidavit of Daniel Forsyth, Esq., in support of the Petition; id.; a further memorandum of law, Docket No. 12; and affidavits of Leslie Shadle, and Niels Hansen, Docket Nos. 13, 14.  The further memorandum and the Shadle and Hansen affidavits also oppose respondent's cross-petition.
 In opposition is respondent's cross-motion, described below, see note 2 infra.

[2] In support of the Cross-Petition, respondent filed the Answer and Cross-Petition with exhibits, Docket No. 2, Exs. A-E.

[3] In support of its motion to compel arbitration, respondent filed the affidavit of the Union's secretary-treasurer and memorandum of law, Docket No. 9.

## BACKGROUND

*Proceedings to Date*

Petitioner Rite Aid of New York, Inc. ("petitioner"), filed a Petition (on October 10, 2007) with New York State Supreme Court (Docket No. 1, Ex. A) to stay an arbitration called for under petitioner's collective bargaining agreement with its union (Docket No 1, Ex. D, Forsyth Aff., Ex. A (hereinafter "CBA"); Docket No. 2, Ans. & Cross-Pet., Ex. A).  That agreement, effective April 29, 2006, to June 13, 2009, covers thirty-two Rite Aid stores in the Rochester, New York, area (see Docket No. 1, Ex. B, Pet'r Memo. at 2).

This labor relations action was removed to this Court on October 24, 2007 (Docket No. 1).  The basis for the removal is claims involving construction of federal labor law (id., Notice of Removal ¶ 5).  With its Notice of Removal, respondent United Food and Commercial Workers District Union Local One ("respondent" or "Union") filed its Answer and Cross-Petition to compel arbitration (Docket No. 2).  Following a status conference (Docket No. 7), the Court set a briefing schedule for the Petition and Cross-Petition, additional papers from respondent (including legal memorandum) were due by February 19, 2008; responses were due by March 4, 2008; and the Petition and Cross-Petition was scheduled for argument on March 7, 2008 (Docket No. 8), but upon further consideration (see also Docket No. 11, respondent's letter motion for adjournment), the Court determined that oral argument was not necessary and the motion was deemed submitted on the papers as of March 4, 2008 (Docket No. 15).

*Factual Background*

In or about August 2007, petitioner acquired additional stores within the Rochester area (Docket No. 2, Cross-Pet, ¶ 11).  The Union attempted to visit these new stores to see if the

employees there wanted it to represent them but petitioner refused entry (id. ¶ 12). In the Petition, petitioner argues that the Union is applying the CBA (including its arbitration provision) to non-union Rite Aid stores and to Rite Aid employees not represented by respondent (Docket No. 1, Ex. B, Pet. ¶ 6).

On August 29, 2007, respondent filed a grievance charging a violation of the CBA provision regarding Union visitation of petitioner's stores, alleging that petitioner denied respondent access to non-union stores within the Rochester area covered by the agreement (id. ¶ 9; id., Forsyth Aff., Ex. B). On September 10, 2007, petitioner's director of labor and labor counsel denied the grievance because he found that it did not cover non-union stores (Docket No. 1, Ex. B, Pet. ¶ 10; id., Forsyth Aff., Ex. C). On September 12, 2007, petitioner received written notice from respondent of its intention to arbitrate this issue (Docket No. 1, Ex. B, Pet. ¶ 11; id., Forsyth Aff., Ex. D). Petitioner claims, on September 20, 2007, it received respondent's notice of arbitration and a letter from the arbitrator, the Federal Mediation and Conciliation Service (Docket No. 1, Ex. B, Pet. ¶ 12; id., Forsyth Aff., Ex. E). In particular, respondent sought to arbitrate whether the employer violated the CBA by failing to allow the union to have access to its stores and sought determination of the appropriate remedy (id.). Petitioner claims that it applied for a stay of arbitration within twenty days of its receipt of the notice of arbitration (Docket No. 1, Ex. B, Pet. ¶ 14), dating the petition for stay on October 9, 2007, but filing it the next day (id., Ex. B, Pet.).

The Union argues that the collective bargaining agreement Article 1.4 states that, in addition to the stores listed in the appendix to that agreement, if petitioner "builds, leases, or acquires any new or existing stores in the geographic area in which these stores are located"

3

petitioner will recognize respondent as the sole bargaining agent for all regular full-time clerical associates and regular part-time associates, provided that respondent can demonstrate that a majority of those employees authorize respondent to act as their agent (Docket No. 2, Cross-Pet. ¶ 7). Article 25.1 of the agreement provides that respondent has the right to visit petitioner's place of business at any time during working hours to determine if employees wish respondent to represent them (id. ¶ 8). The Union invokes Article 19 and its grievance and arbitration procedure for dealing with "all complaints, disputes, controversies or grievances" between petitioner employer and respondent Union (id. ¶ 9; id. Ex. A, CBA art. 19.1). In reply, petitioner contends that there was no agreement between the parties to arbitrate this dispute, that is the CBA applied only to members of the bargaining unit and not to other Rite Aid employees who were not union members (Docket No. 12, Pl. Reply Memo. at 5-10; see Docket No. 13, Hansen Decl. (listing number of collective bargaining agreements petitioner and its parent corporation is a party to and the number of agreements either has with respondent Union)).

     Respondent argues that petitioner was served on September 17, 2007, with its notice of arbitration and did not act within twenty days after service of that notice; rather, petitioner filed its action twenty-three days later, on October 10, 2007, and was untimely under CPLR 7503 (Docket No. 2, Cross-Pet. ¶¶ 17, 18). In reply, petitioner argues, first, that the twenty-day limitation does not apply due to deficiencies in the notice to arbitrate (Docket No. 12, Pl. Reply Memo. at 1-4), second, that the Petition was timely because the period is measured from receipt of the notice (id. at 4-5; Docket No. 13, Shadle Decl. (mail handling procedures at Rite Aid's corporate office and handling of the notice to arbitrate)).

**DISCUSSION**

I.   Standards of Review

Under Federal Rule of Civil Procedure 12(c) for judgment on pleadings, all well pleaded factual allegations are assumed to be true and to be construed in the light most favorable to the petitioner, Patel v. Searles, 305 F.3d 130, 134 (2d Cir. 2002), cert. denied, 538 U.S. 907 (2003); Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57, 61 (2d Cir. 1985), but this presumption under Rule 12(c) does not apply to conclusory allegations, BCCI Holdings v. Pharaon, 43 F. Supp. 2d 359, 364 (S.D.N.Y. 1999).  A motion under Rule 12(c) should be granted if the moving party is entitled to judgment as a matter of law, Burns Int'l Sec. Serv. v. International Union, 47 F.3d 14, 16 (2d Cir. 1994). (Docket No. 9, Resp't Memo. at 4.)

Petitioner cites the interpretation of federal labor law as the basis for removal of this action from state court (Docket No. 1, Notice of Removal ¶ 5).  An agreement to arbitrate labor disputes is enforceable under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 455, 456 (1957) (Docket No. 9, Resp't Memo. at 5).

Where the Petition to stay arbitration originates in state court, New York State procedural rules apply, Morgan v. Nikko Secs. Co. Int'l, 691 F. Supp. 792 (S.D.N.Y. 1988) (Docket No. 12, Pet'r Reply Memo. at 1).

Petitioner contends that there is no agreement between the parties covering non-union stores and the arbitration clause of the collective bargaining agreement does not cover these non-union facilities (Docket No. 1, Ex. B, Pet'r Memo. at 1).  Petitioner sought to stay arbitration under New York CPLR 7503, arguing that there was not a valid agreement to arbitrate (id. at 4),

see Matter of County of Rockland (Pimiano Constr.), 51 N.Y.2d 1, 8, 431 N.Y.S.2d 478, 481 (1980).  Respondent counters that there is an agreement to arbitrate (see Docket No. 9, Resp't Memo. at 5).

II.     Timing of Petition

First, the Court must consider whether petitioner has timely sought a stay of arbitration. Petitioner alternatively argues that the Petition was timely if viewed from date of receipt, or that the Petition is not governed by the limitation period under CPLR 7503 due to defects in the notice to arbitrate.

Under New York CPLR 7503, petitioner had twenty days from service of the notice of arbitration to seek a stay, with service either in the same manner as a summons or by certified or registered mail, CPLR 7503(c).  This twenty-day period is a statute of limitations[4], Jonathan Logan, Inc. v. Stillwater Worsted Mills, Inc., 31 A.D.2d 208, 295 N.Y.S.2d 853 (1st Dep't 1968), aff'd on opinion below, 24 N.Y.2d 898, 301 N.Y.S.2d 636 (1969), responding to notice of arbitration served pursuant to CPLR 7503(c).  The Court cannot extend this period under CPLR 2004, Sisters of Charity of St. Vincent de Paul v. Boegel and Allodi, 32 A.D.2d 818, 302 N.Y.S.2d 462 (2d Dep't 1969).  Service by mail under this provision is timely if the application is posted within the prescribed time, CPLR 7503(c).  The New York Court of Appeals held in Knickerbocker Ins. Co. v. Gilbert, 28 N.Y.2d 57, 61, 320 N.Y.S.2d 12, 14 (1971), that the twenty days to seek a stay of arbitration starts from the actual receipt of notice, rather than mailing of the

---

[4]Since the notice to arbitration and the Petition for stay of arbitration are commencing papers, the five days extended for mailing of papers under CPLR 2103(b)(2) does not apply because that provision applies only to interlocutory papers, Cosmopolitan Mut. Ins. Co. v. Moliere, 31 A.D.2d 924, 298 N.Y.S.2d 561 (1st Dep't 1969).

notice by the party seeking arbitration, although the court stated in dictum that the party seeking arbitration is deemed to have commenced the action upon mailing the notice, id. at 66, 320 N.Y.S.2d at 18; see David D. Siegel, New York Practice § 593, at n. 15 (4th ed. 2008); see also Raisler Corp. v. New York City Hous. Auth., 32 N.Y.2d 274, 280, 344 N.Y.S.2d 917, 920-21 (1973) (measured period for petition to stay arbitration from receipt of notice to arbitrate, holding eleven-day later petition untimely under former period of CPLR 7503); Monarch Ins. Co. v. Pollack, 32 A.D.2d 819, 820, 302 N.Y.S.2d 432, 435 (2d Dep't 1969) (Docket No. 12, Pet'r Reply Memo. at 4). Under the New York General Construction Law, time reckoning begins the calendar day after the event (here, when petitioner was served with the notice to arbitrate). If the period (here, twenty days) ends on a Saturday, Sunday, or legal holiday, the time is extended to the next succeeding business day, Gen. Constr. Law §§ 20, 25-a; see Siegel, supra, New York Practice § 202.

   Here, respondent served petitioner on September 17, 2007 (Docket No. 2, Ans. ¶ 9, Exs. E (proof of certified mailing, dated Sept. 17, 2007), D) and petitioner claims that it received the notice on September 20, 2007 (Docket No. 1, Ex. B, Forsyth Aff. ¶ 7, Ex. E), that the notice was received in the post office that serviced petitioner's corporate office on September 17 but arrived at the office on September 19 and did not reach the addressee within petitioner until the next day (Docket No. 13, Shadle Decl. ¶¶ 8-10, 11-13). The Petition was filed on **October 10, 2007** (Docket No. 1, Exs. A, B).

   If the starting date for the twenty-day period is when respondent mailed the notice of arbitration or reached the post office servicing petitioner (on September 17, 2007), the twenty days would have run on Monday, October 8, 2007 (the actual twentieth day being Sunday,

7

October 7, 2007, cf. Gen. Constr. Law §§ 20, 25-a); if the starting date is when petitioner actually received the mailing (on September 20, 2007), the twenty days would have run on October 10, 2007.  Under Knickerbocker Ins., petitioner's twenty day period to seek a stay of arbitration ran from September 20, 2007, when it received (by the named addressee for the notice) the notice of arbitration, not three days earlier when respondent posted that notice.  Therefore, petitioner **timely** sought to stay the arbitration.

     Alternatively, if there was no agreement to arbitrate, however, the twenty-day limit of CPLR 7502(c) would not apply, Matarasso v. Continental Cas. Co., 56 N.Y.2d 264, 267, 451 N.Y.S.2d 703, 704 (1982).  Since the Petition argues that there was no agreement to arbitrate this particular issue, involving the non-union stores, the timing of the Petition is not bound by the twenty-day limitation period of CPLR 7502(c) (see Docket No. 12, Pet'r Reply Memo. at 5-10).  "Generally, where the parties have entered into an agreement to arbitrate their disputes, and the party desiring arbitration has served a proper notice of intention to arbitrate, the party seeking to avoid arbitration on the ground that the agreement is invalid or has not been complied with, must, under the statute's clear language, seek a stay of arbitration within 20 days of service," id. at 267, 451 N.Y.S.2d at 704, but this applies if the entities are parties to an arbitral agreement, id. at 267, 451 N.Y.S.2d at 704.  In Matarasso, there was no arbitration agreement or provision in the parties' umbrella insurance policy for arbitration, id. at 268, 451 N.Y.S.2d at 705.  That case did not involve a contention that the scope of an existing arbitration agreement did not reach a particular dispute, as is argued here.  Given that the dispute is whether arbitration applies to the disputed construction of the CBA, the twenty-day limitation period does not apply.

Third, petitioner argues that the twenty-day limitation does not apply because of deficiencies in the notice to arbitrate (Docket No. 12, Pet'r Reply Memo. at 1-4). Given that petitioner is not contesting the validity of the notice to seek its dismissal but only to stay it, and the disposition above that the Petition is timely or is not governed by the state law limitation on other grounds, the Court need not delve into the legitimacy of respondent's notice to arbitrate.

Regardless, the Court next turns to the merits of whether respondent's grievance is arbitrable under the CBA.

III.    Extension of Collective Bargaining Agreement to Newly Acquired Stores

The substantive issue here is whether all of the terms of the CBA (such as the union visitation provision) apply to newly acquired stores not listed in the appendix to the agreement in 2006. Petitioner contends that there is no arbitration agreement between it and respondent regarding the underlying dispute, that is the employees of the newly acquired stores (see Docket No. 1, Pet'r Memo. at 4-6; Docket No. 12, Pet'r Reply Memo. at 6), arguing (under New York law) and that an agreement to arbitrate some issues does not mean that the parties agreed to arbitrate all issues between them (id. at 5, quoting Aerotech World Trade Ltd. v. Excalibur Sys., Inc., 236 A.D.2d 609, 611, 654 N.Y.S.2d 386, 387 (2d Dep't 1997)).

Federal law, in particular the Federal Arbitration Act and the Labor Management Relations Act, 29 U.S.C. § 185 (see supra at page 5), favors arbitration; see Nolde Bros. v. Bakery Workers Local 358, 430 U.S. 243, 254 (1977). As the Supreme Court recently reaffirmed in Preston v. Ferrer, No. 06-1463, 2008 U.S. LEXIS 2011, at *7-8, 12-13 (U.S. Feb. 20, 2008), the Federal Arbitration Act, 9 U.S.C. §§ 1, 2, et seq., establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution, applying to

state as well as federal courts, Preston, supra, 2008 U.S. LEXIS 2011, at *13 (citing Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)); see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006) (when parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court).  The Court has the power and duty to enforce arbitration agreements and has a "very limited," United Steelworkers v. American Mfg. Co., 363 U.S. 564, 567-68 (1960), role when the parties submit the contract interpretation questions surrounding arbitration.

Petitioner argues that courts have refused to compel arbitration in situations where the underlying matter was whether the union could represent non-represented employees (Docket No. 12, Pet'r Reply Memo. at 8-9).  Petitioner appears to argue that the grievants here are the non-represented employees (or the Union on their behalf).  Petitioner argues the ultimate issue between the parties, the scope of the CBA and (in its view) that agreement did not include unrepresented employees in the newly acquired facilities.  The cases cited by petitioner are distinguishable; in those cases, the grievance right was held by the individual employee, hence the issue of representation became key.  Local 464, Am. Bakery and Confectionary Workers v. Hershey Chocolate Co., 310 F. Supp. 1182, 1183 n.2 (M.D. Pa.), aff'd, 433 F.2d 926 (3d Cir. 1970); Philadelphia Lithographers & Photoengravers' Int'l Union v. Parade Publ'ns, Inc., 352 F. Supp. 634, 636 n.7 (E.D. Pa. 1972) (Higginbotham, D.J.); American Broadcasting Cos. v. American Fed'n of Television and Radio Artists, 412 F. Supp. 1077, 1079 (S.D.N.Y. 1976) (plaintiff did not have collective bargaining agreement with Washington-Baltimore local).  Those cases did not involve disputes between the unions and the employers directly.  In the ABC case,

for example, an employee in Washington (presumably within the jurisdiction of a Washington-Baltimore local, which lacked a CBA with the network, and not covered by a CBA with the New York local) was laid off. The court held that there was no binding arbitration agreement between ABC and the Washington-based employee, despite the fact that the CBA with the New York local calls for arbitration of disputes arising from the contract, ABC, supra, 412 F. Supp. at 1079. As noted by petitioner (Docket No. 12, Pet'r Reply Memo. at 10), the court held that "it is clear beyond peradventure of doubt that at no time did ABC or any of its representatives actually agree either orally or in writing, nor may an inference be drawn from the conduct of the parties, that any disputes with [that employee] would be arbitrated," id. at 1081.

In this case, however, the parties (the employer and the Union) did agree to arbitrate their disputes concerning the terms of the CBA. The ultimate issue here–whether respondent can arbitrate this issue–mirrors respondent's grievance, but it is not the same issue as the ultimate grievance issue (construction of the visitation provision of the CBA and the CBA's scope toward new non-union stores). Article 19 of the CBA clearly states the parties' intention to have "**all complaints, disputes, controversies or grievances**" (emphasis added) between petitioner employer and respondent Union submitted to arbitration (Docket No 1, Ex. D, Forsyth Aff., Ex. A, Art. 19.1; Docket No. 2, Ans. & Cross-Pet., Ex. A, Art. 19.1). Respondent's grievance is a complaint, dispute or grievance between Rite Aid and the Union on a question "of the interpretation or application" of the written terms of the CBA (id.), in particular respondent's access to the new, non-union stores. The parties agreed to arbitrate disputes between them about the scope of the CBA. Given the strong presumption in favor of arbitrability (see Docket No. 9, Resp't Memo. at 7, 5-7), the Petition should be **denied and a stay of arbitration rejected**, see

11

Operating Eng'rs Local 17 v. Swank Associated Co., 181 F. Supp. 2d 240, 246-47 (W.D.N.Y. 2001) (Schroeder, Mag. J.) (ordering arbitration where clause pertained to "any dispute") (Docket No. 9, Resp't Memo. at 8); respondent's cross-Petition and motion should be **granted**.

## CONCLUSION

Based upon the above, it is recommended that petitioner's Petition (Docket No. 1) to stay arbitration be **denied** and respondent's Cross-Petition to compel arbitration (Docket No. 2) and its motion (Docket No. 9) seeking the same relief be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       March 10, 2008